**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WISDOM POOL EDUCATION LLC,** a Washington limited liability company<br>4122 Factoria Blvd SE, Suite 300<br>Bellevue, WA 98006<br><br>-and-<br><br>**XIAODAN HE,**<br>12840 SE 40th Cr, Apt E2<br>Bellevue, WA 98006<br><br>**Plaintiffs**<br><br>**Against**<br><br>**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,** an agency of the United States,<br>20 Massachusetts Ave NW,<br>Washington DC 20529<br><br>**Defendant** | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT** |

**I. INTRODUCTION**

1.  This action seeks declaratory and injunctive relief against United States Citizenship and Immigration Services ("USCIS") under the Administrative Procedure Act ("APA"), requesting the Court to hold unlawful and set aside USCIS's August 6, 2019 revocation of the Form I-129, Petition for Nonimmigrant Worker (L-1A visa petition) that USCIS had previously approved on behalf of Wisdom Pool Education LLC dba C2 Education Bellevue Center ("C2 Education") to classify Ms. Xiaodan He as a multinational executive or manager. As described below, the decision was erroneous

as a matter of law because the defendant revoked the petition on a basis that not only does not exist in the applicable regulations but also is plainly contrary to the intention of the Secretary of Homeland Security in drafting that regulation and, if allowed as a basis of revocation, would render a portion of that regulation superfluous.

## II. PLAINTIFFS

2. Wisdom Pool Education, LLC dba C2 Education Bellevue Center (C2 Education), is an acclaimed tutoring, test preparation, and education support enterprise in Bellevue, Washington. C2 Education offers expert instruction, ongoing support, and well-defined best practices for maximizing educational results. More information about C2 Education can be found at https://www.c2educate.com/locations/bellevue-wa/.

3. Ms. Xiaodan He is a native and citizen of the People's Republic of China currently residing in Washington state. She has been serving as President of C2 Education under L-1A status since August 9, 2015. She previously worked as a Deputy General Manager for Dongguan Jiazhou Stationery Co. Ltd. dba Gallant Stationery Product Manufacturer (Gallant Stationery) in China from March 2013 to August 2015. Gallant Stationery is a multimillion-dollar, international supplier of stationery for Walmart, Staples, Office Depot, and other notable companies. Under INA definitions, Gallant Stationery and C2 Education qualify as "affiliated" companies.

## III. DEFENDANT

4. The defendant, United States Citizenship and Immigration Services (USCIS), is an agency of the U.S. federal government within the Department of Homeland Security and is responsible for administering statutes and regulations governing immigration

and naturalization and for adjudicating petitions for immigration benefits, including

petitions for alien workers. USCIS resides in the District of Columbia.


## IV. JURISDICTION

5. This being a civil action against the United States arising under the Immigration and

Nationality Act, 8 U.S.C. § 1101, *et. seq.,* and the Administrative Procedure Act, 5

U.S.C. § 701, 702 *et. seq.,* both of which are laws of the United States, original

jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331. Moreover,

nothing requires Plaintiffs to appeal to the Administrative Appeals Office (AAO)

before seeking judicial review in federal court. *RCW Technologies, Inc. v. U.S. Dept.

of Homeland Sec.*, 614 F. Supp. 2d 39, 45 (D.D.C.2009).


## V. STANDING

6. C2 Education, the employer, has a legally protected interest in USCIS making a

decision on C2 Education's petition on behalf of Ms. He that is not arbitrary and

capricious, is not an abuse of discretion, and is instead in accordance with law, 5

U.S.C. § 706(2), and USCIS's invasion of this right has caused C2 Education concrete

and particularized injury in that, as a result of this invasion, C2 Education can no

longer employ Ms. He in L-1A status, and, therefore, may no longer benefit from her

management services and guidance she provides as its President under L-1A status.

There is also a causal connection between the injury-in-fact and the defendant's

challenged behavior in that it is precisely the defendant's revocation of C2 Education's

petition that has caused C2 Education to sustain this loss and it is reasonably certain

that the injury-in-fact will be redressed by a favorable ruling in that an approval of C2 Education's petition will authorize Ms. He to work for it in L-1A status. Accordingly, C2 Education has standing to complain of the agency's decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

7.    Ms. He, the beneficiary of the underlying L-1A petition, likewise has a legally protected interest in a USCIS decision on C2 Education's petition on her behalf that is not arbitrary and capricious, is not an abuse of discretion, and is instead in accordance with law, per 5 U.S.C. § 706(2), and this right has been invaded in that the improper revocation of C2 Education's petition has caused her concrete and particularized injury in at least several ways. First, the revocation prevents her from being employed in L-1A status by C2 Education and earning the revenue she previously received from her employment, especially if USCIS applies the same erroneous reasoning to revoke C2 Education's approved I-140 petition, which is based on statutory and regulatory definitions of "executive" and "manager" identical or effectively identical to those applicable to I-129 petitions for L-1A status. Second, USCIS's revocation has already deprived Ms. He's husband from obtaining derivative L-2 status to return to the United States to be with Ms. He and their children. Finally, the revocation deprives Ms. He of L-1A status, which, if not corrected, puts her at risk of ultimately being compelled to depart the United States to avoid one or more of the following:

   a. Being placed in removal proceedings and subject to detention;

b. Becoming inadmissible to the United States for three years if she departs the United Sates more than 180 days after the unfavorable decision complained of in this action and/or

c. Becoming inadmissible to the United States for 10 years if she departs the United States in a year or more from losing her lawful status.

8. There is a causal connection between the injury-in-fact and the defendant's challenged behavior in that it is precisely the defendant's denial of C2 Education's petition that prevents Ms. He from working for C2 Education in L-1A status, that has already prevented Ms. He's husband from returning to the United States in L-2 status to live as a family with Ms. He and their young children, and that may ultimately require Ms. He to depart the country to avoid the detriments listed above. It is reasonably certain that the injury-in-fact will be redressed by a favorable ruling in that such a ruling will enable Ms. He to resume her lawful employment in lawful L-1A status with C2 Education and allow Ms. He's husband to return to the United States to be with Ms. He and their children. Accordingly, Ms. He. has standing to complain of this action. *Lujan, supra.*

## VI. VENUE

9. Pursuant to 28 U.S.C. § 1391(e), venue is proper in the District of Columbia, where the defendant resides.

## VII. BRIEF STATEMENT OF PROCEDURAL HISTORY
## AND LEGAL BACKGROUND

10. On  June 18, 2018, C2 Education filed with USCIS a Petition for a Nonimmigrant

    Worker (Form I-129), seeking classification for Ms. He under INA §101(1)(15)(L).

11. USCIS approved the petition on July 31, 2018. This approval was the *third* time over

    a four-year period that USCIS has approved either a Form I-129 nonimmigrant L-1A

    petition (in 2015) or a Form I-140 immigrant visa petition (in 2018) under INA's

    parallel employment-based first-preference immigrant category (EB-1C). USCIS

    approved all three petitions of C2 Education on behalf of Ms. He on the same facts

    and on the exact same definition of "executive" capacity found at INA

    §101(a)(44)(B) and 8 U.S.C. §1101(a)(44)(B).

12. On August 6, 2019, following the issuance of a notice of intent to revoke and receipt

    of C2 Education's comprehensive response, USCIS revoked C2 Education's petition

    under 8 C.F.R. § 214.2(*l*)(9)(ii) (the "Decision").

13. The Decision described a number of perceived deficiencies in C2 Education's

    response and repeatedly stated and ultimately concluded that "you [C2 Education]

    have not established that the U.S. business has an organizational structure sufficient

    to elevate the beneficiary to a position that is primarily managerial or executive in

    nature."

## VIII. CAUSE OF ACTION

14. 5 U.S.C. § 706 provides in material part that: "To the extent necessary to decision and

    when presented, the reviewing court shall decide all relevant questions of law,

interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an Agency action. The reviewing court shall--

…

(2)  hold unlawful and set aside Agency action, findings, and conclusions found to be--

(A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."


## COUNT I

### THE REVOCATION WAS NOT IN ACCORDANCE WITH LAW BECAUSE ITS STATED BASIS IS NOT AUTHORIZED BY THE APPLICABLE REGULATION

15.  Revocation of L-1A petitions is authorized solely by 8 C.F.R. § 214.2(l)(9)(iii), which provides (emphasis added) that:

"(A) The director shall send to the petitioner a notice of intent to revoke the petition in relevant part if he/she finds that:

(1) One or more entities are no longer qualifying organizations;

(2) The alien is *no longer* eligible under section 101(a)(15)(L) of the Act;

(3) A qualifying organization(s) violated requirements of section 101(a)(15)(L) and these regulations;

(4) The statement of facts contained in the petition was not true and correct; or

(5) Approval of the petition involved *gross* error; or

(6) None of the qualifying organizations in a blanket petition have used the blanket petition procedure for three consecutive years."

16. None of these grounds include the stated basis for denial, that being that the employer "has not established that the U.S. business has an organizational structure sufficient to elevate the beneficiary to a position that is primarily managerial or executive in nature."

17. In fact, none of the specified grounds for revocation even refer to the employment of the beneficiary except subclause (2) ("The alien is no longer eligible under section 101(a)(15)(L) of the Act;").

18. Nowhere in the Decision is it so much as asserted that Ms. He is *no longer* eligible under section 101(a)(15)(L) of the Act.

19. "No longer" means "not now as formerly". *Mun. Gas Auth. v. Teton Fuels Mid-Georgia, LLC*, No. 1:06-CV-186-JTC, 2008 WL 6690030, 2008 U.S. Dist. LEXIS 104580, at *33 (N.D. Ga. Mar. 26, 2008), quoting the Oxford English Dictionary (2d ed. 1989).

20. To conclude that Ms. He was "no longer" eligible under section 101(a)(15) of the Act, USCIS would necessarily be required to find some kind of change in her employment or the petitioner.

21. This the agency did not do.

22. Rather, USCIS simply found that C2 Education had failed to prove to USCIS's satisfaction for a *second* time in the instant matter—and the ***fourth*** time overall if one also counts USCIS's 2018 approval of C2 Education's EB-1C petition—that Ms. He qualifies as someone who works in an "executive" capacity. The Decision also did not state that it was wrong to have approved this petition in the first place.

23. Finding that Ms. He is not qualified as an "executive" without explaining what has changed between approval and revocation is not only inconsistent with the plain meaning of the phrase "no longer," but also contrary to the obvious intent of the Secretary of Homeland Security in drafting this regulation. Specifically, the Decision's finding renders subclause (2) of the regulation superfluous if the finding is allowed to stand without showing that the beneficiary "no longer" qualifies as a multinational executive or manager.

24. Also, the Decision's finding was not "in accordance with law, because 8 C.F.R. § 214.2(*l*)(9)(iii)(A)(5) (emphasis added) expressly limits USCIS authority to revoke a petition on the basis of prior "error" only if "[a]pproval of the petition involved *gross* error." That is, USCIS regulations preclude revocation for any error less egregious than "gross."

25. The Decision's finding, if allowed to stand, would be contrary to the Secretary of Homeland Security's intent that USCIS may revoke an L-1A petition only if the prior approval was gross error.

26. Further, upholding the revocation would also render that regulation's subclause (5) superfluous in that if a petition may be revoked for simple or ordinary error, there would be no need for a subclause permitting a petition to be revoked for gross error.

27. "Regulations, like statutes, are interpreted according to canons of construction. Chief among these canons is the mandate that 'constructions which render regulatory provisions superfluous are to be avoided.'"  Matter of Castro-Tum, 27 I. & N. Dec. 271, 287 (B.I.A. May 17, 2018), quoting Black & Decker Corp. v. Comm'r of Internal Revenue, 986 F.2d 60, 65 (4th Cir. 1993), quoting Hart v. McLucas, 535

F.2d 516, 519 (9th Cir. 1976)). "There would be no need to provide that immigration judges "may" administratively close specific cases if they already possessed the discretionary power to do so." Castro-Tum, 27 I & N. Dec. at 287.

28. Here if an L-1A petition could be revoked merely upon a showing that the petitioner failed to prove the beneficiary qualifies as a multinational executive or manager, without showing that any change had occurred since the petition was approved then there would never by any reason for the agency to allege or prove that the beneficiary no longer qualifies as an multinational executive or manager, and subclause (2) would be superfluous.


COUNT II

THE BASES UPON WHICH THE DECISION FOUND THAT C2 EDUCATION FAILED TO PROVE THAT MS. HE WAS EMPLOYED IN AN EXECUTIVE CAPACITY ARE ARBITRARY BECAUSE THEY ARE CONCLUSORY AND/OR FAILED TO CONSIDER EXTENSIVE CONTRADICTORY EVIDENCE IN THE RECORD.


29. The Decision to revoke C2 Education's petition on the basis that Ms. He employment does not constitute "executive" or "managerial" capacity appears to be premised on two findings, first, that "the evidence you [C2 Education] submitted does not clearly demonstrate that the U.S. entity has a subordinate level of managerial employees for the beneficiary to direct and primarily focus on the broad goals and policies of the organization rather than the day-to-day operations of the enterprise," and, second, that C2 Education has "not established that the U.S. business has an organizational structure sufficient to elevate the beneficiary to a

position that is primarily managerial or executive in nature." Both of these holdings are arbitrary.

    **A. The finding that C2 Education's supporting evidence does not establish sufficient managerial staff for Ms. He "to direct and primarily focus on broad goals and policies of the organization rather than the day-to-day operations of the enterprise" was arbitrary because it was conclusory.**

30.  The Decision's holding that C2 Education's evidence, including 9 pages of detailed job descriptions of Ms. He and her 19 subordinate employees, some of whom have master and Ph.D. degrees and most of whom have bachelor's degrees, was "vague" or otherwise insufficient to establish Ms. He's qualification as an "executive" cannot be distinguished from the decision reviewed in *Butte Cty. v. Hogen*, 613 F.3d 190 (D.C. Cir. 2010), where the D.C. Circuit Court of Appeals found that an agency's denial of an in forma pauperis request, challenged as being arbitrary and capricious, would have been insufficient, standing alone, because the conclusory declaration that the requestor's affidavit of indigency was "inadequately supported" did not explain why the agency regarded the request as unsupported and was not "'self-explanatory,' …from the statement's context.

31.  So too the claim that C2 Education's 7 pages of job description of subordinate managerial and professional employees and specific, detailed examples of how they work under the oversight of the beneficiary is "insufficient" did not explain why the USCIS regarded the detailed job descriptions as insufficiently detailed, and USCIS's conclusion was not "'self-explanatory,' …from the statement's context." It was therefore conclusory, and so arbitrary.

**B. The claim that C2 Education's supporting documents do not show that the company has an organizational structure that elevates Ms. He to a primarily managerial or executive in nature is arbitrary because it ignores contradictory evidence.**

32. The Decision's finding that C2 Education has "not established that the U.S. business has an organizational structure sufficient to elevate the beneficiary to a position that is primarily managerial or executive in nature" simply ignored the 7 pages of job description of the 19 subordinates, most of whom are managerial and professional employees. The Decision shows no indication that USCIS read, much less considered, the actual evidence submitted that clearly demonstrates an organization structure that elevates Ms. He to a primarily executive or managerial position. Moreover, the statement that "you [C2 Education] provided a description of duties for four (4) subordinate employees" is simply contrary to the 7 pages of detailed job description of Ms. He's 19 direct and indirect subordinates, including one senior manager and three junior managers, as well as well as detailed description of how Ms. He directs and oversees the operation of C2 Education by directly overseeing the senior manager and indirectly overseeing the three junior managers, who in turn oversee 12 professional tutors and 3 administrative staff, all of whom hold at least a baccalaureate degree, and many of whom hold advanced degrees. USCIS's claim completely ignores the list of professional employees working under the junior managers, their educational backgrounds (many with master or Ph.D. degrees), and their job descriptions, including 12 professional tutors and 3 administrative staff. In referencing only "four (4) subordinate employees," the Decision simply ignores the existence of the 15 first-line professional employees, who work directly under the 3

junior manager, who in return work under the one senior managers who work directly under Ms. He's oversight.

33. Such a wholesale disregard of relevant evidence makes a decision arbitrary. *See, e.g., Genuine Parts Co. v. EPA*, 890 F.3d 304, 312 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence contradicting its position." (quoting *Butte Cty*, 613 F.3d at 194) and *Stellar IT Sols., Inc. v. United States Citizenship & Immigration Servs*., 2018 U.S. Dist. LEXIS 196284, *23.

## COUNT III

### THE REVOCATION WAS ARBITRARY AND UNLAWFUL BECAUSE USCIS DOES NOT HAVE THE AUTHORITY UNDER THE INA OR ITS IMPLEMENTING REGULAITONS TO REQUIRE C2 EDUCATION TO HAVE AN ORGANIZATIONAL STRUCTURE TO "ELEVATE" THE BENEFICIARY TO AN EXECUTIVE POSITION

34. The Decision repeats three times and ultimately concludes that the C2 Education has "not established that the U.S. business has an organizational structure sufficient to elevate the beneficiary to a position that is primarily managerial or executive in nature."

35. The Decision is unlawful and should be set aside because USCIS does not have the authority under the INA or its implementing regulations to require any particular "organizational structure" it may believe is necessary to "elevate" an L-1A beneficiary to an executive position. Such an "organizational structure" requirement is, as a matter of law, directly at odds with the definition of L-1A executive at INA § 101(a)(44)(B); *see also* 8 CFR § 214.2(*l*)(1)(ii)(C). Under the INA, "executive capacity" means an

13

assignment within an organization in which the employee primarily (i.e., not "solely")

meets the following four-part test:

> *(1) Directs* the management of the organization or a major component or function of the organization;
>
> *(2) Establishes* the goals and policies of the organization, component, or function;
>
> *(3) Exercises* wide latitude in discretionary decision-making; and
>
> *(4) Receives* only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

INA § 101(a)(44)(B); *see also* 8 CFR § 214.2(*l*)(1)(ii)(C) (emphasis added).

36. The Decision's arbitrary imposition of a vague "organizational structure"

requirement is neither authorized nor intended by Congress for petitions, such as C2

Education's petition, that are based on *executive* capacity—as opposed to those

based on *managerial* capacity. In fact, Congress contemplated the very requirement

that USCIS alleges is at play here, but only in the *other* category, namely

"managerial" capacity. In defining "managerial capacity"—which is a completely

separate and distinct from the definition of "executive capacity—INA §

101(a)(44)(A) does require that a manager "supervises and controls the work of

other supervisory, professional, or managerial employees."

37. The INA's clear difference in statutory language between the definition of

"executive capacity" in INA INA § 101(a)(44)(B) and the definition of "managerial

capacity" in INA § 101(a)(44)(A) shows that Congress did intent for managers to

oversee managers, professionals, and supervisory employees, but did not impose the

same requirement on executives. It was therefore arbitrary and capricious for the

Decision to try to impose legal requirements from a completely separate and distinct category under which C2 Education did not petition.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Hold unlawful and set aside USCIS's decision revoking C2 Education's I-129 petition on behalf of Ms. Xiaodan He;

(3) Order Defendant to withdraw the revocation, and to reinstate the approval of C2 Education's I-129 petition;

(4) Grand reasonable attorneys' fees and costs as provided under the Equal Access to Justice Act and the APA;

(5) Grant such further relief as the Court deems just, equitable, and proper.

Respectfully submitted this ___ day of October, 2019.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28